IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUBERSKI, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. 3:16-cv-01323 |
| | § | |
| B.O.K.F., N.A., | § | |
| doing business as Bank of Texas, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Luberski, Inc. ("**Plaintiff**") files this Original Complaint against Defendant B.O.K.F., N.A., d/b/a Bank of Texas ("Bank of Texas" or "Defendant"), and alleges as follows:

## I.
## INTRODUCTION

1.  This lawsuit is brought to recover damages from Bank of Texas for its wrongful actions in preventing Plaintiff, through its escrow agent, Robert Frisch, from accessing the collateral assets of Robert Greeves, which Plaintiff was entitled to foreclose upon pursuant to a valid personal guaranty Robert Greeves executed in January 2013.

## II.
## PARTIES

2.  Plaintiff Luberski, Inc. is a corporation duly organized and existing under the laws of the State of California, with its principal place of business at 310 North Harbor Drive, Fullerton, California 92832.

**PLAINTIFF'S ORIGINAL COMPLAINT**
WEST\269406045.1

3.      Upon information and belief, Defendant B.O.K.F., N.A., doing business as Bank of Texas at 6701 Preston Road, Dallas, Texas 75205, is a national banking association conducting business in Dallas County, Texas, with its domicile in the state of Oklahoma and a principal office in Texas at 5956 Sherry Lane, Dallas, Texas 75225.  Bank of Texas may be served with process on its registered agent in Texas, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136, or through the Texas Secretary of State.

### III.
### JURISDICTION AND VENUE

4.      The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  Plaintiff is incorporated in the state of California and has its principal place of business in California, and Defendant is a national banking association with its principal place of business in the state of Oklahoma.  The amount in controversy exceeds $75,000.00 in that the principal amount due and owing on the loan from Plaintiff to Defendant that is secured by the guaranty agreement giving rise to this dispute is $150,000.00, plus accrued interest, and/or the fair market value of the Collateral securing such Loan, which was, upon information and belief, at the time of its purchase, approximately $187,000.00.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this judicial district, as shown above, all or a substantial part of the events giving rise to this action occurred in this judicial district, and the personal property securing the guaranty at issue in this dispute is believed to be located in this judicial district.

### IV.
### STATEMENT OF FACTS

6.      On or around January 25, 2013, Plaintiff entered a loan agreement (the "Loan Agreement") with Heritage Oil and Gas, Inc. ("Heritage Oil") whereby Plaintiff agreed to loan a principal sum of $225,000 to Heritage Oil (the "Loan").

7. On or around January 25, 2013, Robert Greeves, executed a personal guaranty and security agreement, entitled "Personal Guarantor Robert C. Greeves Security Agreement" (the "Guaranty") to secure the Loan to Heritage Oil.

8. The Guaranty granted Plaintiff a security interest and lien over all of the rights and title to certain personal property of Greeves: 4,900 ounces of silver coins and Krugerands, and 1,000 ounces of silver bars and silver dollars (the "Collateral"), which, at the time of its purchase, upon information and belief, had a value of approximately $187,000.00.

9. Plaintiff's security interest in the Collateral was perfected by possession upon execution of the Guaranty.

10. Also on or around January 25, 2013, Robert Greeves executed an agreement entitled "Irrevocable Escrow Instructions" which set forth certain pre-funding obligations of the parties to the Irrevocable Escrow Instructions, including Guarantor Robert Greeves.

11. As required by the Guaranty and the Irrevocable Escrow Instructions, the Collateral was to be held in escrow in a safety deposit box in the name of the escrow agent, Robert K. Frisch, Esq. ("Frisch") at Bank of Texas, located at 6701 Preston Road, Dallas, Texas 72505.

12. Following execution of the Guaranty, Frisch and Robert Greeves visited Bank of Texas's location at 6701 Preston Road, Dallas, Texas 72505, to place the Collateral in Frisch's name and to conduct an inventory of the Collateral.

13. During the visit to Bank of Texas, Frisch presented a copy of the Guaranty executed by Robert Greeves and discussed with the bank officer the requirements under the Irrevocable Escrow Instructions, including the requirement that the safety deposit box in which the Collateral was to be held should be placed in Frisch's name.

14. Upon information and belief, Frisch signed various documents that placed the safety deposit boxes in his name and was given keys to the safety deposit boxes containing the Collateral by the bank officer.

15. Upon information and belief, although both Frisch and Robert Greeves had keys to the safety deposit boxes containing the Collateral, it was Frisch's understanding that both Frisch's key and Robert Greeves's key would be required to access the safety deposit boxes.

16. On or around July 25, 2013, the Loan matured and became fully due and payable.

17. Heritage Oil subsequently defaulted on its repayment obligations under the Loan Agreement.

18. Upon information and belief, following Heritage Oil's default, in or around November 2013, a notice of the default and a demand for payment was sent to Heritage Oil and Robert Greeves.

19. Upon information and belief, in or around May 2014, a notice of Plaintiff's intent to foreclose upon the Collateral was sent to Robert Greeves.

20. As of May 2014, Robert Greeves's obligations under the Guaranty had been triggered because the payments required under the Loan Agreement had not been made.

21. Upon information and belief, in May 2014, Frisch went to Bank of Texas, where the Collateral was being held in safety deposit boxes, for the purpose of collecting the Collateral to satisfy, at least in part, the amount due and owing under Loan Agreement.

22. Upon information and belief, when Frisch arrived at Bank of Texas to collect the Collateral, he observed Robert Greeves and a man later identified as Spencer Greeves, Robert Greeves's son, sitting in an office with a bank representative.

23. Upon information and belief, when Frisch attempted to sign in to gain access to the safety deposit vault, a bank representative asked Frisch for his keys to the safety deposit boxes.

24. Upon information and belief, when Frisch complied with the bank representative's request and handed her the safety deposit box keys, the bank representative placed a call stating that she was in possession of Frisch's keys.

25. Then, another bank representative, who Frisch presumed to be the bank manager, informed Frisch that Robert Greeves had stated that he did not owe Frisch any money, that Spencer Greeves had power of attorney for Robert Greeves's financial affairs, and that he had no documentation that Frisch had the authority to take the actions he was taking, and to contact Spencer Greeves at his office.

26. The bank manager then asked Frisch to leave the bank immediately or else Frisch would be escorted out by bank security.

27. Upon information and belief, in or around May 2014, Bank of Texas, through its employees or officers, removed Robert Frisch as a co-owner from the two safety deposit accounts in which the Collateral was being held without obtaining Frisch's or Plaintiff's consent.

28. As a result of the above actions of Bank of Texas, Plaintiff has been unable to gain access to the Collateral to exercise Plaintiff's rights and remedies under the Guaranty and take possession of the Collateral to satisfy, at least in part, the amount owed under the Loan Agreement.

## V.
## CAUSES OF ACTION

### A. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

29. Paragraphs 1-28 are incorporated here as if set forth in full.

30. Plaintiff and Robert Greeves entered into a valid Guaranty in which Robert Greeves agreed to guarantee the obligations contained in the Loan Agreement.

31. Plaintiff performed its obligations under the Guaranty by loaning $225,000.00 to Heritage Oil.

32. The signatories to the Loan Agreement failed to make the payments required under the Loan Agreement.

33. As of May 2014, Robert Greeves's obligations under the Guaranty had been triggered because the payments required under the Loan Agreement have not been made.

34. Bank of Texas was aware of Robert Greeves's obligations under the Guaranty and the requirements of the Irrevocable Escrow Instructions, which Frisch discussed with a bank officer when he placed the safety deposit boxes containing the Collateral in his name and was added as a co-owner on the safety deposit accounts.

35. Upon information and belief, Bank of Texas, through its employees, agents, and representatives, willfully and intentionally interfered with the valid Personal Guaranty between Robert Greeves and Plaintiff.

36. Specifically, Bank of Texas interfered with Plaintiff's rights under the Personal Guaranty by confiscating Frisch's keys to the safety deposit boxes and by removing Frisch from the safety deposit box accounts as a co-owner without Frisch's consent, thereby preventing Plaintiff, through its agent Robert Frisch, from accessing and collecting the Collateral in partial satisfaction of the amount due and owing under the Loan Agreement and Personal Guaranty.

37. As a direct and proximate result of Bank of Texas's intentional interference, Plaintiff has been injured in that Plaintiff has been unable to gain access to and collect the Collateral.

38. Plaintiff has incurred actual damages as a result of the Bank of Texas's intentional interference with the Personal Guaranty, including, but not limited to, the loss of the fair market value of the Collateral to satisfy the amount due and owing under the Loan Agreement and the Guaranty.

39. Thus, Plaintiff seeks recovery from Defendant in the amount of the equivalent market value of the Collateral, plus the maximum interest allowed by law, plus exemplary damages.

### B.   CONVERSION/AIDING OR ABETTING CONVERSION

40. Paragraphs 1-28 are incorporated herein as if set forth in full.

41. Under the Guaranty, Plaintiff had legal right to the Collateral and was entitled to foreclose upon the Collateral and remove it from Bank of Texas.

42. In May 2014, after Plaintiff's security interest had been perfected by possession, and without obtaining Plaintiff's or Frisch's prior consent, Bank of Texas, acting through its employees or agents, intentionally excluded Robert Frisch from the safety deposit boxes, with the intent to preclude Plaintiff from obtaining the Collateral. In so doing, Bank of Texas has wrongfully exercised dominion and control over the Collateral in a manner that is inconsistent with Plaintiff's rights under the Guaranty, and has thereby converted the Collateral.

43. As a direct result of Bank of Texas's wrongful withholding and conversion of the Collateral to which Plaintiff had legal right, Plaintiff has been damaged. Specifically, Plaintiff

has been denied access to the Collateral to satisfy, at least in part, the amount due and owing under the Loan Agreement, and has been deprived of the fair market value of the Collateral.

44. In addition, or in the alternative, Bank of Texas aided or abetted Robert Greeves's or Spencer Greeves's wrongful conversion of the Collateral.

45. Upon information and belief, Bank of Texas had knowledge of the Guaranty and Plaintiff's right to collect the Collateral through Frisch, the escrow agent, and owed a duty to Plaintiff to safeguard the Collateral.

46. Upon information and belief, Bank of Texas had knowledge that Robert Greeves and/or Spencer Greeves was attempting to convert the Collateral.

47. As evidenced by its employees' affirmative acts taken to exclude Frisch from the safety deposit boxes and accessing the Collateral, Bank of Texas, through its employees, intended to assist, and did assist, Robert Greeves and/or Spencer Greeves conversion of the Collateral.

48. Bank of Texas's assistance in excluding Frisch from the safety deposit boxes and preventing Frisch from accessing the Collateral was a substantial factor in causing Robert Greeves's and/or Spencer Greeves's conversion of the Collateral.

49. In light of the foregoing, Plaintiff seeks actual damages, including, but not limited to, the reasonable market value of the Collateral at the time of the conversion plus legal interest, and/or the highest market value of the Collateral between the time of the conversion to the present, plus legal interest, given that the silver's value was of a fluctuating or changing nature.

### C. NEGLIGENCE

50. Paragraphs 1-28 are incorporated herein as if set forth in full.

51. In the alternative, Bank of Texas owed a legal duty to Plaintiff to protect and safeguard the Collateral being held for the benefit of Plaintiff.

52. Bank of Texas, through its employees or agents, breached its duty to Plaintiff by, among other things, failing the document the escrow instructions given to the bank officer when Frisch was added as a co-owner on the safety deposit boxes, wrongfully excluding Frisch from the safety deposit boxes and removing Frisch as a co-owner on the safety deposit accounts without proper investigation into the matter and without Plaintiff's or Frisch's consent, to the detriment of Plaintiff.

53. Bank of Texas's breach proximately caused Plaintiff's injury, which was inherently undiscoverable and objectively verifiable.

54. As a direct result of Defendant's negligence, Plaintiff has been damaged. Specifically, Plaintiff has been denied access to the Collateral and has been deprived of the fair market value of the Collateral.

### CONDITIONS PRECEDENT

55. All conditions precedent to the aforementioned causes of action have been satisfied or excused.

### ATTORNEYS' FEES AND COSTS

56. Paragraphs 1-55 are incorporated here as if set forth in full.

57. Plaintiff is entitled to recover attorneys' fees. Defendant's wrongful acts have necessitated that Plaintiff hire counsel to investigate its claims and to file suit to recover its damages.

58. The Guaranty expressly entitles Plaintiff to recover any attorneys' fees incurred in the collection of the debt under the Guaranty.

59. Plaintiff further requests all court costs allowed by law.

## VI.
## REQUEST FOR RELIEF

Plaintiff requests that the Court grant the following relief:

(a) Judgment awarding Plaintiff monetary damages in the amount of the fair market value of the Collateral;

(b) In the alternative, issue an order for repossession and sale of the Collateral with the proceeds to be applied to the amount owed to Plaintiff pursuant to the Guaranty and Loan Agreement;

(c) Reasonable and necessary attorneys' fees;

(d) All recoverable costs of suit;

(e) Pre- and post-judgment interest at the maximum rate permitted by law; and

(f) All other relief, in law or equity, to which it is justly entitled.

Dated: May 13, 2016                                Respectfully submitted,

**DLA PIPER LLP (US)**

By: /s/ *Christina Ponig*_____
    Christina Ponig
    State Bar No. 24041706
    Katherine Chambers
    State Bar No. 24083709

    Wells Fargo Plaza
    1000 Louisiana Street, Suite 2800
    Houston, Texas 77002
    Telephone: (713) 425-8400
    Facsimile: (713) 425-8401
    christina.ponig@dlapiper.com
    katherine.chambers@dlapiper.com

**ATTORNEYS FOR PLAINTIFF LUBERSKI, INC.**